IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


SHAWN DWAYNE WICKLIFFE,

        Plaintiff,

vs.                              Case No. 16-2556-SAC

NANCY A. BERRYHILL,
Acting Commissioner of
Social Security,[1]

        Defendant.


MEMORANDUM AND ORDER

This is an action reviewing the final decision of the Commissioner of Social Security denying the plaintiff disability insurance benefits. The matter has been fully briefed by the parties.

**I. General legal standards**

The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." The court should review the Commissioner's decision to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the correct legal standards. <u>Glenn v. Shalala</u>, 21 F.3d 983, 984

---

[1] On January 20, 2017, Nancy A. Berryhill replaced Carolyn W. Colvin as Acting Commissioner of Social Security.

(10th Cir. 1994).  Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied by such evidence that a reasonable mind might accept to support the conclusion.  The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion.  Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).  Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted.  Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational.  Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992).  The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met.  Glenn, 21 F.3d at 984.

The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in

substantial gainful activity (SGA). The claimant's physical or mental impairment or impairments must be of such severity that they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability.  If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further.  At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity."  At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled.  If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform

their previous work, they are determined not to be disabled. If the claimant survives step four, the fifth and final step requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis. Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy. Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993). The Commissioner meets this burden if the decision is supported by substantial evidence. Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC). This RFC assessment is used to evaluate the claim at both step four and step five. 20 C.F.R. §§ 404.1520(a)(4), 404.1520(e,f,g); 416.920(a)(4), 416.920(e,f,g).

**II. History of case**

On March 25, 2016, administrative law judge (ALJ) Timothy G. Stueve issued his decision (R. at 24-37). Plaintiff alleges that he has been disabled since December 26, 2014 (R. at 24).

4

Plaintiff is insured for disability insurance benefits through December 31, 2019 (R. at 26). At step one, the ALJ found that plaintiff has not engaged in substantial gainful activity since the alleged onset date (R. at 26). At step two, the ALJ found that plaintiff had severe impairments (R. at 26). At step three, the ALJ determined that plaintiff's impairments do not meet or equal a listed impairment (R. at 27). After determining plaintiff's RFC (R. at 28), the ALJ found at step four that plaintiff is unable to perform any past relevant work (R. at 35). At step five, the ALJ found that plaintiff could perform other jobs that exist in significant numbers in the national economy (R. at 36-37). Therefore, the ALJ concluded that plaintiff was not disabled (R. at 37).

**III. Did the ALJ err in the relative weight accorded to the various medical opinions?**

The opinions of physicians, psychologists, or psychiatrists who have seen a claimant over a period of time for purposes of treatment are given more weight than the views of consulting physicians or those who only review the medical records and never examine the claimant. The opinion of an examining physician is generally entitled to less weight than that of a treating physician, and the opinion of an agency physician who has never seen the claimant is entitled to the least weight of all. Robinson v. Barnhart, 366 F.3d 1078, 1084 (10th Cir. 2004).

When a treating source opinion is inconsistent with the other medical evidence, the ALJ's task is to examine the other medical source's reports to see if they outweigh the treating source's reports, not the other way around. Treating source opinions are given particular weight because of their unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations. If an ALJ intends to rely on a nontreating physician or examiner's opinion, he must explain the weight he is giving to it. Hamlin v. Barnhart, 365 F.3d 1208, 1215 (10th Cir. 2004). The ALJ must provide a legally sufficient explanation for rejecting the opinion of treating medical sources in favor of non-examining or consulting medical sources. Robinson, 366 F.3d at 1084.

A treating physician's opinion about the nature and severity of the claimant's impairments should be given controlling weight by the Commissioner if well supported by clinical and laboratory diagnostic techniques and if it is not inconsistent with other substantial evidence in the record. Castellano v. Secretary of Health & Human Services, 26 F.3d 1027, 1029 (10th Cir. 1994); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). When a treating physician opinion is not given controlling weight, the ALJ must nonetheless specify what lesser weight he assigned the treating physician opinion. Robinson v.

6

Barnhart, 366 F.3d 1078, 1083 (10th Cir. 2004). A treating source opinion not entitled to controlling weight is still entitled to deference and must be weighed using all of the following factors:

(1) the length of the treatment relationship and the frequency of examination;
(2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed;
(3) the degree to which the physician's opinion is supported by relevant evidence;
(4) consistency between the opinion and the record as a whole;
(5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and
(6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

Watkins v. Barnhart, 350 F.3d 1297, 1300-1301 (10th Cir. 2003).

After considering the above factors, the ALJ must give good reasons in his/her decision for the weight he/she ultimately assigns the opinion. If the ALJ rejects the opinion completely, he/she must then give specific, legitimate reasons for doing so. Watkins, 350 F.3d at 1301.

The court will not reweigh the evidence or substitute its judgment for that of the Commissioner. Hackett v. Barnhart, 395 F.3d 1168, 1173 (10th Cir. 2005); White v. Barnhart, 287 F.3d 903, 905, 908, 909 (10th Cir. 2002). Although the court will not reweigh the evidence, the conclusions reached by the ALJ must be reasonable and consistent with the evidence. See Glenn v. Shalala, 21 F.3d 983, 988 (10th Cir. 1994)(the court must

affirm if, considering the evidence as a whole, there is sufficient evidence which a reasonable mind might accept as adequate to support a conclusion). The court can only review the sufficiency of the evidence. Although the evidence may support a contrary finding, the court cannot displace the agency's choice between two fairly conflicting views, even though the court may have justifiably made a different choice had the matter been before it de novo. Oldham v. Astrue, 509 F.3d 1254, 1257-1258 (10th Cir. 2007).

The ALJ's decision discussed in some depth plaintiff's medical records (R. at 29-31, 32-34). In regards to plaintiff's physical RFC limitations, the ALJ gave great weight to the opinions of Dr. Parsons (R. at 31), a non-examining physician who reviewed the medical records and provided an opinion in regards to plaintiff's physical RFC on December 2, 2015 (R. at 125-129). The ALJ gave little weight to the opinion of the VA that plaintiff had the following physical disabilities: limited use of arm (20%), chronic obstructive pulmonary disease (10%), and tinnitus/hearing loss (10%) (R. at 1003) (R at 31).

The ALJ noted that there is no direct correlation between a VA disability and the inability to perform substantial gainful activity that exists in significant numbers in the national economy (R. at 31). The court would note that the VA determination does not indicate the effect of those disability

ratings on plaintiff's exertional, postural, manipulative, visual, communicative, and environmental limitations (R. at 125-127). Plaintiff's physical RFC limitations includes lifting, carrying and postural limitations, limitations in the use of his left non-dominant arm, limitations in noise exposure (only moderate noise), and environmental limitations (R. at 28). There is no medical opinion evidence in the record that disputes the physical RFC limitations found by the ALJ, or that states that plaintiff has limitations not included in the ALJ's physical RFC findings.

    The court will not reweigh the evidence. The court finds that substantial evidence supports the ALJ's physical RFC limitations. There was no clear error by the ALJ in his analysis of the medical and medical opinion evidence regarding plaintiff's physical limitations.

    In regards to plaintiff's mental limitations, the ALJ limited plaintiff to understanding, carrying out and remembering simple, routine, repetitive tasks involving only simple, work-related decisions with few, if any workplace changes. He is also limited to no fast-moving assembly line-type work, and no interaction with the public (R. at 28).

    The ALJ, in making his mental RFC findings, gave significant weight to the opinions of two non-examining psychological consultants (R. at 34). Dr. Adams offered her

opinions on May 7, 2015 (R. at 102-104, 109-110), and Dr. Schulman offered his opinions on November 18, 2015 (R. at 122-124, 129-131). The ALJ found these opinions consistent with plaintiff's activities of daily living, but the ALJ further limited plaintiff to simple, routine, repetitive tasks secondary to his occasionally circumstantial speech and occasional distractibility (R. at 34).

The ALJ only gave minimal weigh to the VA assignment of a 70% disability rating due to post-traumatic stress disorder (PTSD) (R. at 34). The ALJ noted that there is no direct correlation between a VA disability and the ability or inability to perform substantial gainful activity that exists in significant numbers in the national economy (R. at 34-35). The ALJ also relied on a statement from plaintiff's last employer that plaintiff only quit his last job in December 2014 because of a shoulder injury (R. at 35). The employer indicated that plaintiff fell off his roof putting up Christmas lights. The employer further stated that plaintiff had no difficulties performing the job either mentally or physically, and further stated that he was a great employee (R. at 309-311).

The ALJ also considered a psychological assessment, dated April 16, 2015, from Dr. Jordan, a licensed psychologist. Dr. Jordan diagnosed PTSD, but found that plaintiff is able to understand and follow directions, his ability to attend and

10

concentrate is adequate, and that plaintiff was cooperative and appeared to have appropriate social skills, She found significant PTSD symptoms, and physical symptoms resulting from his combat injuries, but concluded that he presented as a generally well-functioning man (R. at 787-792).  The ALJ accorded only partial weight to this opinion, noting that her findings were based on a single examination, and the ALJ found that her findings were inconsistent with plaintiff's generally abnormal mood and occasional distractibility as noted in a progress report (R. at 35).

Although the VA indicated that plaintiff has a 70% disability due to PTSD, the VA did not indicate the effect of this disability in regards to specific mental limitations.  The ALJ reasonably relied on the opinions of Dr. Adams, Dr. Schulman, Dr. Jordan and the medical records in establishing plaintiff's mental RFC.  Plaintiff's last employer stated that plaintiff had no mental difficulties performing his job and further stated that he was a great employee.  There is no medical opinion evidence that disputes the mental RFC limitations found by the ALJ, or that states that plaintiff has limitations not included in the ALJ's mental RFC findings.

The court will not reweigh the evidence.  The court finds that substantial evidence supports the ALJ's mental RFC limitations.  There was no clear error by the ALJ in his

11

analysis of the medical and medical opinion evidence regarding plaintiff's mental limitations. The court further finds that, on the facts of this case, the ALJ fully and fairly developed the record in regards to plaintiff's impairments and limitations.

**IV.  Did the ALJ err in his credibility analysis?**

Plaintiff also alleges error in the ALJ's credibility analysis and in his consideration of the statements from plaintiff's mother. Credibility determinations are peculiarly the province of the finder of fact, and a court will not upset such determinations when supported by substantial evidence. However, findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings. Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995). Furthermore, the ALJ cannot ignore evidence favorable to the plaintiff. Owen v. Chater, 913 F. Supp. 1413, 1420 (D. Kan. 1995).

When analyzing evidence of pain, the court does not require a formalistic factor-by-factor recitation of the evidence. So long as the ALJ sets forth the specific evidence he relies on in evaluating the claimant's credibility, the ALJ will be deemed to have satisfied the requirements set forth in Kepler. White v. Barnhart, 287 F.3d 903, 909 (10th Cir. 2002); Qualls v. Apfel, 206 F.3d 1368, 1372 (10th Cir. 2000). Furthermore, the ALJ need

not discuss every relevant factor in evaluating pain testimony. Bates v. Barnhart, 222 F. Supp.2d 1252, 1260 (D. Kan. 2002). An ALJ must therefore explain and support with substantial evidence which part(s) of claimant's testimony he did not believe and why. McGoffin v. Barnhart, 288 F.3d 1248, 1254 (10th Cir. 2002). It is error for the ALJ to use standard boilerplate language which fails to set forth the specific evidence the ALJ considered in determining that a claimant's complaints were not credible. Hardman v. Barnhart, 362 F.3d 676, 679 (10th Cir. 2004). On the other hand, an ALJ's credibility determination which does not rest on mere boilerplate language, but which is linked to specific findings of fact fairly derived from the record, will be affirmed by the court. White, 287 F.3d at 909-910.

The court finds no clear error by the ALJ in his credibility analysis, or in his finding that the statements of plaintiff's mother was not fully credible. The ALJ reasonably relied on the medical evidence, the medical opinion evidence, and the testimony from plaintiff's last employer in finding that plaintiff was not fully credible, and that the statements from plaintiff's mother were not fully credible. As the ALJ stated, plaintiff's work record suggests his symptoms are not as limiting as alleged (R. at 30). The balance of the ALJ's credibility analysis was supported by substantial evidence in

13

the record.  See Barnum v. Barnhart, 385 F.3d 1268, 1274 (10th Cir. 2004)(while the court had some concerns about the ALJ's reliance on plaintiff's alleged failure to follow a weight loss program and her performance of certain household chores, the court concluded that the balance of the ALJ's credibility analysis was supported by substantial evidence in the record).

**V.  Did the ALJ err in finding that plaintiff could perform work as a laundry sorter, photocopy machine operator, and a mail clerk?**

The ALJ's RFC findings limited plaintiff to only occasionally pushing/pulling with the non-dominant left arm, no overhead reaching with the left arm, and only occasionally reaching in front and laterally with the left arm (R. at 28). The VE identified 3 jobs that plaintiff could perform, laundry sorter, photocopy machine operator, and mail clerk.  The VE described these jobs as basically one-armed jobs (R. at 75), and stated that they could be performed one-armed (R. at 75-76). The ALJ adopted these findings by the VE, and found that plaintiff could perform these jobs in the national economy (R. at 36).  The ALJ noted that although the DOT (Dictionary of Occupational Titles) indicates that the above jobs require frequent reaching, the VE testified that plaintiff could perform these jobs with one arm (R. at 36-37).

Plaintiff claims that because these jobs require frequent reaching, they conflict with the DOT.  SSR 00-4p states that before relying on VE evidence to support a disability determination or decision, an ALJ must identify and obtain a reasonable explanation for any conflicts between occupational evidence provided by vocational experts and information in the DOT [Dictionary of Occupational Titles] (including its companion publication, the Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles (SCO)) and explain in the decision how any conflict that has been identified was resolved.  2000 WL 1898704 at *1.  In making disability determinations, defendant will rely primarily on the DOT for information about the requirements of work. Occupational evidence provided by a VE should be consistent with the occupational information supplied by the DOT.  When there is an apparent unresolved conflict between the VE evidence and the DOT, the ALJ must elicit a reasonable explanation for the conflict before relying on the VE evidence to support a decision about whether a claimant is disabled.  At the hearing level, as part of the ALJ's duty to fully develop the record, the ALJ will inquire, on the record, as to whether or not there is such consistency.  If a conflict exists, the ALJ must resolve the conflict by determining if the explanation given by the VE is reasonable and provides a basis for relying on the VE testimony

15

rather than on the DOT information.  2000 WL 1898704 at *2; Haddock v. Apfel, 196 F.3d 1084, 1091 (10th Cir. 1999)(we hold that the ALJ must investigate and elicit a reasonable explanation for any conflict between the DOT and expert testimony before the ALJ may rely on the expert's testimony as substantial evidence to support a determination of nondisability).

In the case of Segovia v. Astrue, 226 Fed. Appx. 801, 804 (10th Cir. March 23, 2007), the court held as follows:

> Both the ticket-taker and cafeteria-attendant positions require..."frequent" reaching, see SCO §§ 09.05.02, 09.05.08; Aplt.App. at 439, 446, while Ms. Segovia is limited to occasional overhead reaching. For purposes of the SCO, however, "reaching" is defined as "[e]xtending hand(s) and arm(s) in any direction." SCO at C-3 (emphasis added). **The SCO does not separately classify overhead reaching. Thus, under the SCO, even a job requiring frequent reaching does not necessarily require more than occasional overhead reaching. The VE was aware of Ms. Segovia's limitations on overhead reaching, and he testified both that she could perform the jobs he identified and that his opinion of the jobs open to her was consistent with the DOT's specifications. Aplt.App. at 391-92, 395. In these circumstances, the VE's testimony does not conflict with the DOT and SCO so much as it clarifies how their broad categorizations apply to this specific case.** See Carey v. Apfel, 230 F.3d 131, 146 (5th Cir.2000) ("To the extent that there is any implied or indirect conflict between the vocational expert's testimony and the DOT in this case, ... the ALJ may rely upon the vocational expert's testimony provided that the record reflects an adequate basis for

>     doing so.... [A]ll kinds of implicit
>     conflicts are possible and the categorical
>     requirements listed in the DOT do not and
>     cannot satisfactorily answer every such
>     situation."). Further, the DOT descriptions
>     for cafeteria attendant and ticket taker do
>     not indicate that these jobs predominantly
>     involve overhead reaching rather than other
>     types of reaching. See DOT §§ 311.677-010,
>     344.667-010; Aplt.App. at 437, 445.

(emphasis added).

In the case of Williams v. Astrue, Case No. 09-1341-SAC (D. Kan. Oct. 26, 2010), plaintiff was limited to work that did not require significant use of the non-dominant left upper extremity (Doc. 19 at 19). The four jobs identified by the VE and the ALJ as jobs that plaintiff could perform in that case required the frequent ability to reach, handle and finger. The court held as follows:

>     The DOT and the SCO do not separately
>     classify reaching, handling or fingering
>     with one hand, or both hands, or the
>     dominant or non-dominant hand. Thus, under
>     the SCO, a job requiring frequent reaching,
>     handling and fingering does not necessarily
>     require that a claimant be able to
>     frequently reach, handle and/or finger with
>     both hands or with the non-dominant hand.
>     As was the case in Segovia, the VE was aware
>     of plaintiff's limitation with the non-
>     dominant left hand, and he testified that
>     plaintiff could perform the jobs he
>     identified and that his opinion was
>     consistent with the DOT [citations to record
>     omitted]. The court finds that in these
>     circumstances, the VE's testimony does not
>     conflict with the DOT and SCO so much as it
>     clarifies how their broad categorizations
>     apply to this specific case. The court

>finds no clear error by the ALJ in his findings at step five.

Williams v. Astrue, Case No. 09-1341-SAC (D. Kan. Oct. 26, 2010; Doc. 19 at 20-21). In the case of Bennett v. Colvin, Case No. 14-2505-SAC (D. Kan. Jan. 27, 2016; Doc. 26 at 7-11), the court, relying on the above cases, found no error when the ALJ determined that plaintiff could not engage in frequent repetitive activity with his left upper extremity and cannot perform work at a production pace, such as on an assembly line, but that plaintiff could perform work that required the ability to reach, handle and finger frequently. See Mitton v. Colvin, 2015 WL 8780537 at *11-12 (D. N.J. Dec. 15, 2015)(the court found no conflict with the VE testimony and the DOT when claimant limited to occasional fingering and handling with non-dominant hand and the VE identified jobs which required frequent fingering and handling; the court noted that the DOT does not require full bilateral dexterity to satisfy handling and fingering requirement); Gholston v. Colvin, 2015 WL 6167824 at *22 (D. Iowa Oct. 21, 2015)(VE testified that claimant with full functional capabilities in dominant arm and a limitation to occasional gross manipulation in non-dominant arm could perform jobs requiring frequent reaching and handling, VE further testified that testimony consistent with DOT; court noted DOT does not specify a bilateral versus unilateral requirement for

reaching and handling, and held that ALJ could reasonably have concluded that there is no conflict between hypothetical question and DOT); Mendoza v. Colvin, 2015 WL 4572321 at *2 (D. Nev. July 29, 2015)(court noted majority of district courts in 9th Circuit have held that a job description in the DOT does not conflict with a claimant's inability to fully reach with one arm or hand unless the description requires bilateral reaching).

The facts of this case are identical to those in Williams and Bennett. The VE was informed that plaintiff was limited in the use of his left hand, and the VE identified jobs that could be performed one-armed. Although those jobs require frequent reaching, the VE testified that plaintiff could perform those jobs. Based on the above case law, the court finds no error by the ALJ in her findings at step five in regards to this issue.

IT IS THEREFORE ORDERED that the judgment of the Commissioner is affirmed pursuant to sentence four of 42 U.S.C. § 405(g).

Dated this 25th day of July 2017, Topeka, Kansas.

s/Sam A. Crow
Sam A. Crow, U.S. District Senior Judge